IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

THOMAS LAURO, #A0153221,   )   CIV. NO. 19-00633 JAO-KJM
                 )
       Plaintiff,   )   DISMISSAL ORDER
                 )
     vs.   )
                 )
STATE OF HAWAII, et al.,   )
                 )
       Defendants.   )
_____   )

## DISMISSAL ORDER

Before the Court is pro se Plaintiff Thomas Lauro's ("Plaintiff['s]")

Complaint brought pursuant to 42 U.S.C. §§ 1983 and 1985. Compl., ECF No. 1.[1]

Plaintiff is incarcerated at the Halawa Correctional Facility ("HCF") pursuant to

the August 7, 2019 revocation of his parole in *State v. Russo*, 1PC121001460

(Haw. 1st Cir. 2013) ("*Russo*").[2] *See* Compl., ECF No. 1 at 3. Plaintiff names as

---

[1] The Court refers to the pagination assigned to filed documents by the Federal Judiciary's Case Management/Electronic Case Files system ("CM/ECF").

[2] The Court takes judicial notice of Plaintiff's state court proceedings in *Russo* (showing "Thomas Russo" is also known as "Thomas Lauro"), and in Plaintiff's post-conviction challenge in *Lauro v. State*, 1CPN-19-0000002 (Haw. 1st Cir.) (filed October 22, 2019), both of which can be publicly accessed at https://www.courts.state.hi.us (follow "eCourt Kokua"; then follow "Case Search" for the respective case numbers in "Case ID"). *See* Fed. R. Evid. 201(b); *Harris v.*
(continued...)

Defendants: (1) the State of Hawaii; (2) the Department of Public Safety ("DPS");

(3) the Hawaii Paroling Authority ("HPA"); (4) HPA Chairman Edmund "Fred"

Hyun; (5) HPA Board Member Max N. Otani; (6) HPA Paroles and Pardons

Administrator Tommy Johnson; (7) DPS Director Nolan Espinda; (8) HPA Parole

Officer Earl Everett; and (9) John and Jane Does 1–100 (collectively,

"Defendants"), in their individual and official capacities. He asserts that

Defendants unlawfully revoked his parole, causing him to be re-incarcerated,

which he alleges has or may subject him to cruel and unusual punishment.

The Complaint and this action are DISMISSED without prejudice, but

without leave to amend, as barred by the doctrine of *Heck v. Humphrey*, 512 U.S.

477 (1994). Plaintiff's pending motions, ECF Nos. 4 and 5, are DENIED as moot.

# I. **STATUTORY SCREENING**

The Court must conduct a pre-answer screening of a prisoner's pleading

pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Claims or complaints that are

frivolous, malicious, fail to state a claim for relief, or seek damages from

defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203

F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d

---

[2](...continued)
*County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).

1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The "mere possibility of misconduct" or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678–79 (citation omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Rule 8(a)(2) of the Federal Rules of Civil Procedure ("FRCP") "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When screening, the Court accepts the allegations of the complaint as true, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted), and construes the pleading liberally. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

3

(citations omitted). Leave to amend must be granted if it appears the plaintiff can correct the complaint's defects. *See Lopez*, 203 F.3d at 1130. Dismissal without leave to amend is appropriate if a claim or complaint cannot be saved by amendment. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  BACKGROUND

Plaintiff alleges that prison officials denied him adequate medical care when he was incarcerated at HCF in or about July 13, 2011 and July 13, 2012. *See* Compl., ECF No. 1. at 9. He alleges this resulted in the loss of his colon, disfigurement, disability, and "ongoing catastrophic damages." *Id.* Plaintiff says that then-DPS Medical Director, Steven DeWitt, M.D., testified before the HPA in "Nov-Dec, 2011," and admitted that DPS was liable for Plaintiff's injuries. *Id.*

While awaiting trial in *Russo*, Plaintiff, represented by counsel, sued the State and DPS officials in state court for medical malpractice, negligence, and state and federal constitutional violations. *See Lauro v. State*, 1CC121002784 (Haw. 1st Cir.); Defendants removed the suit to this federal district court on November 29, 2012. *See Lauro v. State of Hawaii*, CIV. NO. 12-00637 DKW-RT

(D. Haw.) ("*Lauro I*"), Notice of Removal, ECF No. 1.[3]

On April 24, 2013, Plaintiff pled guilty in the Circuit Court of the First Circuit, State of Hawaii ("circuit court"), to Theft in the Second Degree (Count 1),[4] and Habitual Property Crime (Count 2), in violation of Hawai'i Revised Statutes ("HRS") §§ 708-831(1)(b) and 708-803, respectively. *See Russo*, Mins. filed Apr. 24, 2013.

On July 10, 2013, the circuit court dismissed Count 2 with prejudice, waived all fees and mandatory fines, sentenced Plaintiff to an indeterminate five-year term as to Count 1, and reduced Plaintiff's mandatory minimum term to six months. *See Russo*, Mins. filed July 10, 2013. Plaintiff did not directly appeal, although he filed three unsuccessful petitions for post-conviction relief in the circuit court between September 2013 and August 2015. *See generally Russo* (docket sheet).

───────────────

[3] To make complete sense of Plaintiff's claims, the Court takes notice of the proceedings in *Lauro I*; *Lauro v. Hawaii Dep't of Public Safety*, CV 19-00585 DKW-KJM (D. Haw) ("*Lauro II*"); and *Lauro v. Honolulu City & Cty. Prosecutor's Office*, CIV NO. 19-00632 LEK-WRP (D. Haw.) ("*Lauro III*"). *See* Fed. R. Evid. 201(b); *Harris*, 682 F.3d at 1131–32.

[4] When Plaintiff was arrested and sentenced, Theft in the Second Degree was defined as theft of property in excess of $300; it was a class C felony punishable with an indeterminate term of five years. *See* HRS §§ 708-831(1)(b), 708-830, 706-660 (Supp. 2012).

On or about August 20, 2015, while Plaintiff was litigating *Lauro I* in federal court, he was released on parole. *See Lauro I*, Green Decl., ECF No. 218-1 ¶¶ 6–8.

On December 3, 2015, *Lauro I* was dismissed with prejudice pursuant to FRCP Rule 41(b), *see Lauro I*, Order Dismissing Case, ECF No. 321 at 10, for Plaintiff's "continuous, willful, and deliberate conduct in failing to cooperate with his counsel or comply with court orders." *Lauro I*, Order Denying Motion for Relief from Judgment, ECF No. 357 at 4 (detailing the case's procedural history). On May 5, 2016, the Ninth Circuit Court of Appeals dismissed Plaintiff's appeal for his failure to prosecute. *See Lauro I*, Mandate, ECF No. 341 (regarding appeal docketed as No. 15-17457 (9th Cir. Dec. 11, 2015)).

On or about June 27, 2019, Plaintiff was arrested for violating the terms and conditions of parole in *Russo*. *See Lauro Decl.*, ECF No. 348-1 at 8. Plaintiff then began filing requests, letters, and motions to reopen *Lauro I*. *See, e.g.*, *Lauro I*, ECF Nos. 342–44, 347-–49, 354, 356.

On or about October 22, 2019, while attempting to reopen *Lauro I*, Plaintiff filed a state petition for post-conviction relief in the circuit court challenging his conviction and sentence in *Russo*, which remains pending. *See Lauro v. State*,

1CPN-19-0000002 (Haw. 1st Cir.) (last visited Feb. 3, 2020).[5]

On October 25, 2019, Plaintiff filed *Lauro II* with the stated intent of reopening his dismissed claims in *Lauro I*. *See Lauro II*, ECF No. 1. The case was dismissed on January 9, 2020, as precluded by the doctrine of res judicata. *See Lauro II*, Order, ECF No. 14.

On November 25, 2019, Plaintiff filed the present action and *Lauro III*, both pursuant to 42 U.S.C. §§ 1983 and 1985(2). *See* Compl., ECF No. 1; *Lauro III*, ECF No. 1. *Lauro III* was dismissed on January 28, 2020 for failure to state a colorable claim for relief. *See Lauro III*, Dismissal Order, ECF No. 8 (dismissing claims under *Heck v. Humphrey*, based on prosecutorial immunity, and as time-barred).

In the present action, Plaintiff asserts that, although he pled guilty to Theft in the Second Degree in *Russo*, he was really only guilty of Theft in the *Third Degree*[6] because the wholesale value of the items he stole was less than $300, his crime was non-violent, and the items were immediately returned to the vendor.

---

[5] Plaintiff filed an amended petition in 1CPN-19-0000002 on November 22, 2019, and a second amended petition on December 9, 2019.

[6] Theft in the Third Degree applies to the theft of property exceeding $100; it is a misdemeanor punishable up to one year in prison. *See* HRS §§ 708-832, 706-663 (Supp. 2012).

*See* Compl., ECF No. 1 at 10.  Because Theft in the Third Degree is a misdemeanor carrying a one-year term of imprisonment, Plaintiff asserts that he is subject to a one-year sentence only, which would have expired before his arrest in June 2019, making the revocation of his parole illegal.  *See id.*

Plaintiff claims that Defendants knew or should have known that his sentence is illegal because the facts in *Russo* show that he is guilty only of Theft in the Third Degree, not Theft in the Second Degree.  *See* Compl., ECF No. 1 at 9–14.  He claims that Defendants also knew that he was disabled by the allegedly inadequate medical care he received at HCF in 2011 and 2012.  Plaintiff alleges that Defendants conspired to revoke his parole to retaliate against him for having sued the State in *Lauro I*, knowing that he would be returned to HCF, where he alleges he will be unable to obtain necessary surgery.  He therefore alleges that Defendants revoked his parole with deliberate indifference to his health and safety, and that their actions constitute cruel and unusual punishment, wrongful imprisonment, and gross negligence.  *See id.*  Plaintiff seeks immediate release from prison and compensation for the medical injuries that he allegedly incurred at HCF in 2011 and 2012, or that he may incur if he is denied surgery.  *See id.* at 15.

### III. **DISCUSSION**

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus" or a civil rights complaint brought pursuant to 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Generally, claims alleging constitutional violations related to the "circumstances" of a prisoner's confinement must be brought under § 1983, *id.*, while constitutional challenges to the validity or duration of that confinement, that seek "immediate release from prison" or the "shortening of [a state prison] term," must be raised in a petition for habeas corpus under 28 U.S.C. § 2254 (or through appropriate state relief). *Wilkinson v. Dotson*, 544 U.S. 74, 78–79 (2005) (citations and internal quotation marks omitted); *see Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) ("The Court has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action." (citing *Dotson*, 544 U.S. at 81–82)).

### A. *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court held:

> [T]o recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence

invalid, a § 1983 plaintiff must prove that the conviction or
sentence has been reversed on direct appeal, expunged by
executive order, declared invalid by a state tribunal authorized
to make such determination, or called into question by a federal
court's issuance of a writ of habeas corpus[.]

512 U.S. at 486–87 (footnote and citation omitted). "A claim for damages bearing

that relationship to a conviction or sentence that has not been so invalidated is not

cognizable under § 1983." *Id.* at 487 (emphasis omitted). The *Heck* rule clearly

applies to challenges to the revocation of parole based on a defendant's alleged

unconstitutional conduct. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091,

1098 (9th Cir. 2004) (holding that a challenge to the denial of parole based upon

deceit and bias by parole board is barred by *Heck* because it implies the invalidity

of the inmates' confinement); *France v. Eyster*, No. C 19-6141 WHA (PR), 2019

WL 6134926, at *1 (N.D. Cal. Nov. 18, 2019) ("*Heck* applies to claims that, if

true, call into question the validity of a probation or parole determination."

(citations omitted)).

Thus, if a plaintiff seeks damages *or* equitable relief based on claims that

would "necessarily imply the invalidity" of an underlying conviction or sentence,

and he has not shown that the conviction or sentence has been invalidated on

direct appeal or through a successful federal or state habeas petition, the claims are

not cognizable and the complaint must be dismissed without prejudice.

*McQuillion*, 369 F.3d at 1094 ; *see also Dotson*, 544 U.S. at 81–83 (distinguishing between challenges to parole *procedures*, which are appropriately raised under § 1983 because success will not necessarily lead to immediate or speedier release, and challenges to the revocation or denial of parole, which "seek[] invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement"); *Wilson v. City of Fountain Valley*, 372 F. Supp. 2d 1178, 1195–96 (C.D. Cal. 2004); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995). This is known as the "favorable termination" doctrine. *See Heck*, 512 U.S. at 492.

Plaintiff does not show that his conviction has been "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. To the contrary, he explicitly seeks release based on his allegations of an illegal revocation of parole. These claims, if successful, would "necessarily imply the invalidity" of his parole revocation and present incarceration. To be clear, regardless of Defendants' motivation for the revocation of parole, Plaintiff's claims call into question the validity of that revocation and his current incarceration.

And despite Plaintiff's attempt to frame his claims as based on Defendants' allegedly improper motives, Plaintiff does *not* challenge the HPA procedures by which his parole was revoked. *See Dotson*, 544 U.S. at 82 (precluding claims that

11

do not seek invalidation of "*state procedures* used to deny parole eligibility . . .
and parole suitability" (emphasis added)); *Drennon v. Blades*, Case No. 1:19-cv-
00021-REB, at \*5 (D. Idaho Dec. 26, 2019) (dismissing allegations of retaliatory
parole revocation under *Heck*).  That is, he does not allege that he was denied a
preliminary hearing, a determination of probable cause to revoke parole, a
revocation hearing, the right to an attorney, the right to confront witnesses and
present documents, or any other procedural requirement set forth in Hawaiʻi
Administrative Rules ("HAR") §§ 23-700-41 to -44, which govern parole
revocation procedures.  *See also* HRS §§ 353-62, -65, -66; 706-670.

The Complaint and this action are barred by the doctrine of *Heck v.
Humphrey* and are DISMISSED without prejudice for Plaintiff's failure to state a
colorable claim for relief, but without leave to amend.  Plaintiff may raise these
claims in a *new* action if he demonstrates theinvalidation of his conviction and
sentence.  *See Edwards v. Balisok*, 520 U.S. 641, 649 (1997).

## B.  Claims Otherwise Barred

The Court notes that even if Plaintiff's conviction and sentence in *Russo* are
overturned, expunged, or otherwise legally called into question, the following
legal standards that appear to apply to his claims bar most of them.

## 1. *Eleventh Amendment Immunity*

The Eleventh Amendment bars suit in federal court against a state or state agencies absent a valid abrogation of immunity by Congress or an express waiver of immunity by the State. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–268 (1997); *Edelman v. Jordan*, 415 U.S. 651, 653 (1974); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Hawaiʻi has not waived immunity from suit in federal court. *See Beckmann v. Ito*, — F. Supp. 3d — , Civ. No. 18-00503 ACK-RT, 2020 WL 53559, at *17 (D. Haw. January 3, 2020) (citation omitted). In addition, states and state agencies are not "persons" subject to suit for money damages under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65, 71 (1989). The State, DPS, HPA, and individual Defendants named in their official capacities have Eleventh Amendment immunity from suit for damages in federal court.

Additionally, official capacity defendants are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, Civ. No. 12-00137 HG-BMK, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010)). Plaintiff does *not* allege an

13

ongoing constitutional violation; he discusses the allegedly inadequate medical care and conditions of confinement to which he was subjected *before* he was paroled in *Russo*, and he speculates that he may be denied surgery. He asserts no allegations that support a claim for unconstitutional conditions of confinement since his parole revocation and his re-incarceration. And the injunctive relief he seeks — release — is precluded under *Heck*.

Thus, as alleged, Plaintiff fails to state a claim for monetary damages against the State, DPS, HPA, and all Defendants named in their official capacities.

### 2.    *HPA Board Members:  Absolute Quasi-judicial Immunity*

Parole board officials "are entitled to absolute quasi-judicial immunity for decisions 'to grant, deny, or revoke parole' because these tasks are 'functionally comparable' to tasks performed by judges." *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981)); *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir. 1991) (holding *Sellars* immunity encompasses actions "taken when processing parole applications" (citing *Sellars*, 641 F.2d at 1302)). *Swift* noted that absolute immunity extends to "parole officials for the 'imposition of parole conditions' and the 'execution of parole revocation procedures,'" because these actions are "integrally related to an official's decision to grant or revoke parole." 384 F.3d at 1189 (quoting *Anderson*

14

*v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983)).  For these reasons, HPA board

members Hyun and Otani are entitled to absolute quasi-judicial immunity for their

decision to revoke Plaintiff's parole and for any actions taken to execute that

revocation.

Parole officers and administrators, such as Officer Everett and Pardons

Administrator Johnson, however, "are not absolutely immune from suits arising

from conduct distinct from the decision to grant, deny, or revoke parole," such as

issuing a parole hold without authorization by the parole board, or recommending

the initiation of parole revocation proceedings.  *Id.* at 1191–93.

### 3.    *Supervisory Liability:  DPS Director Espinda*

Plaintiff states that Director Espinda "had me confined in the 'Hole' SHU

(Special Holding unit) and the HCF Psych ward for over one year and then sent

me a 'memo' stating he had made an 'Error' and attempted to place me back into

the General Population with a seriously debilitating medical condition[.]"  Compl.,

ECF No. 1 at 4.  These allegations clearly relate to incidents that were dismissed

with prejudice in *Lauro I* in 2015.  As Plaintiff has been advised, these claims are

barred by the doctrine of res judicata, *see Lauro II*, Dismissal Order, ECF No. 14

at 7, and are time-barred, *see Lauro III*, Dismissal Order, ECF No. 8 at 11–13.

Plaintiff further alleges that Director Espinda is "Respondeat Superior to

Defendant Hawaii Paroling Authority," suggesting that he had control over the HPA's decision to revoke his parole based on his position as DPS Director. Compl., ECF No. 1 at 4. However, supervisors may not be held liable under § 1983 for the unconstitutional actions of their subordinates based solely on a theory of respondeat superior. *See Moss*, 675 F.3d at 1230; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that under § 1983 "[t]here is no respondeat superior liability" because such liability requires a showing of personal involvement).

Rather, supervisors may be held liable under § 1983:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a 'reckless or callous indifference to the rights of others.'

*Moss*, 675 F.3d at 1231 (quoting *al Kidd v. Ashcroft*, 580 F.3d 949, 965 (9th Cir. 2009), *overruled on other grounds by Ashcroft v. al Kidd*, 563 U.S.731 (2011)) (footnote omitted); *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) ("[An] inmate[] must show that each defendant personally played a role in violating the Constitution." (footnote omitted)).

Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011)). However, absent personal involvement, a supervisor can only be held liable under § 1983 if "there exists . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates*, 883 F.3d at 1242–43). A "causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (alterations in original) (internal quotation marks and citation omitted).

The administrative rules governing the HPA state in pertinent part:

> The [HPA] is an independent quasi-judicial body which, for administrative purposes only, is attached to the Department of Public Safety. Decisions of the Authority are not subject to the approval of the Department of Public Safety.

HAR § 23-700-2(b). Director Espinda had no authority to direct the HPA to

revoke Plaintiff's parole.  And Plaintiff alleges no facts showing that Espinda was

personally involved in or had a causal connection to the revocation of his parole.

For these reasons, Plaintiff's allegations against Espinda fail to state a colorable

claim for relief.

### 4. Doe Defendants 1–100

The Federal Rules of Civil Procedure do not authorize or prohibit the use of

fictitious parties, although Rule 10 requires a plaintiff to include the names of all

parties in his complaint.  Fed. R. Civ. P. 10(a).  Doe defendants are generally

disfavored, however, because it is effectively impossible for the United States

Marshal to serve an anonymous defendant.

A plaintiff may refer to unknown defendants as John or Jane Doe 1, John or

Jane Doe 2, and so on, but he must allege specific facts showing how each

particular doe defendant violated his rights.  The plaintiff may then use the

discovery process to obtain the names of doe defendants and seek leave to amend

to name those defendants, unless it is clear that discovery will not uncover the

identities, or that the complaint will be dismissed on other grounds.  *See Wakefield*

*v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*,

629 F.2d 637, 642 (9th Cir. 1980)).

Plaintiff names John and Jane Does 1–100, but he alleges no facts against

any specific Doe Defendant in relation to the revocation of his parole (or to any other possible claim). Plaintiff fails to state a claim against John and Jane Does 1–100.

### 5. *Conspiracy under 42 U.S.C. § 1983*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

"Conspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (citations omitted). Thus, conclusory allegations of a conspiracy are insufficient, and standing alone they fail to state a valid § 1983 claim. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam). To state a conspiracy claim under § 1983, a plaintiff must allege specific facts showing that two or more persons intended to accomplish an unlawful objective of causing him harm and took some concerted action in furtherance of that goal. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999). That is, Plaintiff "must show 'an agreement or "meeting of the minds" to violate constitutional rights.'" *Hart v. Parks*, 450 F.3d 1059,

1069 (9th Cir. 2006) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)).

Plaintiff alleges no specific facts from which the Court can infer that Defendants conspired to revoke his parole to retaliate against him for having unsuccessfully sued the State in *Lauro I*. This conclusory allegation appears implausible because *Lauro I*'s dismissal with prejudice in 2015 effectively precluded Plaintiff's claims against the State. Plaintiff did not continue pressing his suit beyond filing a notice of appeal, which was dismissed for his failure to prosecute. Because Plaintiff's claims were dismissed, without more, Plaintiff has failed to allege any logical explanation for *any* State defendant to retaliate against Plaintiff four years later by arresting him and revoking his parole.

To be clear, Plaintiff does not allege that he did *not* violate the terms and conditions of his parole, or that he was denied due process at his parole revocation hearing.[7] Rather, he alleges that he is not guilty of Theft in the Second Degree, although he pled guilty to that crime, and therefore, he is not subject to the remainder of his five-year term. But the record is clear that Plaintiff has not yet prevailed in having his conviction in *Russo* reversed.

Plaintiff's conclusory allegations of a conspiracy, without any factual

---

[7] Plaintiff states that he was represented by Deputy Public Defender Phyllis Hironaka at the August 7, 2019 revocation hearing. *See* Compl., ECF No. 1 at 5.

support, are implausible. The "mere possibility of misconduct" or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678–79 (citation omitted).

### 6. Retaliation

Plaintiff alleges Defendants retaliated against him for filing *Lauro I*. A retaliation claim requires five basic elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted); *accord Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

A causal connection between the adverse action and the protected conduct can be asserted by an allegation of a chronology of events from which retaliation can be inferred. *See Watison*, 688 F.3d at 1114. The plaintiff must also allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Id.* (quoting *Rhodes*, 408 F.3d at 567–68 n.11). "[A] plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or

silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*, 584 F.3d 1271 (emphasis omitted) (quoting *Rhodes*, 408 F.3d at 568–69). A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Watison*, 668 F.3d at 1115 (citations omitted).

Plaintiff alleges insufficient facts to demonstrate that any named Defendant acted to revoke his parole because he sued the State nearly six years earlier in *Lauro I*, as discussed in Part III.B.5. Moreover, the chronology of events does not support Plaintiff because following the dismissal of *Lauro I*, Plaintiff took no further action to pursue his claims until *after* he was arrested and his parole was revoked.

Plaintiff alleges no facts showing that the revocation of his parole chilled the exercise of his First Amendment rights, or would chill an inmate of ordinary firmness. He also fails to allege facts showing that the revocation of his parole did not reasonably advance a legitimate penological goal — protection of the public by imposing consequences on parolees who violate the terms and conditions of parole. Plaintiff acknowledges that he was sentenced to a five-year term and that

he had not completed that term when he was arrested for a violation of parole. Plaintiff has not pled a cognizable claim for retaliation.

### 7.    *Cruel and Unusual Punishment*

Plaintiff alleges the revocation of parole imposed cruel and unusual punishment on him because he may not receive needed surgery. Prison officials have a duty under the Eighth Amendment to avoid excessive risks to inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a claim under the Eighth Amendment, Plaintiff must allege Defendants were deliberately indifferent to "conditions posing a substantial risk of serious harm" to him. *Id.* (citation and footnote omitted). Deliberate indifference is more than mere negligence, but less than purpose or knowledge. *See id.* at 836. To properly allege deliberate indifference, a plaintiff must show actual harm. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

While Plaintiff alleges he *may* be denied surgery, and complains that he will not be given adequate care in light of his disabilities, he alleges no facts showing that prison officials have denied him surgery recommended by his treating physician, or showing that any other any physical harm since his parole was revoked. He also does not explain how Defendants HPA board members and staff,

and the DPS Director have any involvement in or control over medical decisions at HCF.

### 8. Section 1985

Under § 1985, a conspiracy to interfere with civil rights can arise under one of three possibilities: (1) preventing an officer from performing his or her duties; (2) obstructing justice by intimidating a party, witness, or juror; or (3) depriving persons of rights or privileges. *See* 42 U.S.C. § 1985. Plaintiff apparently alleges a claim under § 1985(3). Under § 1985(3),

> [A] complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States.

*Gillespie*, 629 F.2d at 641 (citation omitted).

Because § 1985 derives from the Thirteenth Amendment, a plaintiff must also allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) (footnote omitted); *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989); *Gillespie*, 629 F.2d at 641. Plaintiff alleges no

facts suggesting that Defendants revoked his parole based on a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

## C.    Plaintiff's Motions

On January 15, 2020, Plaintiff filed two motions and a letter in this action. *See* ECF No. 4 ("Motion to Order Retaliatory State Defendants to Include USDC, HI Federal in Forma Pauperis Approvals to Pay for Outgoing Federal Court Documents Postage from Defendants Wrongfull [sic] Coustudy [sic] to USDC, HI, (HCF to USDC, HI) from Victim-Plaintiff Thomas Lauro aka Thomas Reyes, w/Exhibits"); ECF No. 5 ("Motion to Compel Production of the Sealed Portion of the 11/19/15 Motion to Withdraw as Plaintiff's Councel [sic] of Which Caused a Material Change of Circumstance Conveyed to the Court by Plaintiff[']s Councel [sic] (Michael Green, Earl Anzai and Glenn Usegui esq.)").[8]  It is not evident that these Motions apply to the present suit.  To the extent that they do, they are DENIED as moot.

---

[8]  Similar motions and letters were also filed in *Lauro I*, *Lauro II*, and *Lauro III*. *See Lauro I*, ECF Nos. 358–60; *Lauro II*, ECF Nos. 16–18; *Lauro III*, ECF Nos. 5–7.

## IV.  28 U.S.C. § 1915(g)[9]

This dismissal may later count as a "strike" under the "3-strikes" provision

of 28 U.S.C. § 1915(g), because it is clear from the pleadings and judicially

noticeable documents referenced therein that this action is completely barred by

*Heck.  See Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048,

1055–56 (9th Cir. 2016) (holding a dismissal under *Heck* may count as a strike for

failure to state a claim if "the pleadings present an 'obvious bar to securing relief'"

and all claims are so dismissed) (citation omitted).

## V.  CONCLUSION

(1)     The Complaint and this action are DISMISSED for failure to state a

claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), without leave granted to

amend, but without prejudice to refiling such claims in a new action should

Plaintiff's conviction and/or sentence in *State v. Russo*, 1PC121001460 (Haw. 1st

Cir.), be reversed, expunged, or declared invalid.

---

[9] Prisoners may not proceed in forma pauperis under 28 U.S.C. § 1915 if they
have "on 3 or more prior occasions, while incarcerated or detained . . . brought an
action or appeal" in the federal courts that was dismissed as frivolous, malicious,
or for failure to state a claim, unless they are under imminent danger of serious
physical injury.  28 U.S.C. § 1915(g).

(2)     All pending Motions are DENIED as moot.

(3)     The Clerk shall TERMINATE this action and enter judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, February 7, 2020.



Jill A. Otake
United States District Judge